# THE UNITED STATES OF AMERICA *vs.* ALLEN & ROBINSON, LIMITED, *et al.*

## March 30, 1911.

*Monopolies—Combinations, contracts in restraint of trade:*    Bill for injunction to restrain dealers in lumber from combining to arbitrarily maintain high and oppressive prices in violation of 26 Stat. L. 209 (''Sherman Act''), dismissed for failure of proof.

*Same:*    Where an equilibrium of prices is reached by suspicious watchfulness of each other's dealings on the part of competing merchants, or by a friendly exchange of information and views as to the state of the market, with an expectation, more or less definite, that all will approximate to the same standards, there is no violation of the statute; unless there also exists an agreement or understanding to fix prices with the object of control and monopoly.

*Same—Transportation—Freight rates:*    Under the circumstances of this case, there was no violation of the statute in the acceptance by several competing merchants of the proposition of a transportation company to pool their orders for a certain commodity to be shipped over its line, in order to obtain lower freight rates offered for large shipments.

*In Equity:*    Bill to enjoin monopoly.

*R. W. Breckons,* U. S. District Attorney, and *W. T. Rawlins,* Ass't. U. S. District Attorney, for the Government.

*Castle & Withington,* Attorneys for Lewers & Cooke, Ltd.

*Holmes, Stanley & Olson,* Attorneys for Allen & Robinson, Ltd.

DOLE, J.    This bill alleges that the defendants are engaged in the business of bringing lumber into the Territory of Hawaii and selling the same to dealers and consumers in such Territory, and comprise nearly all the wholesale dealers in lumber in such Territory who import lumber for sale, and who can, if combined together, control the prices thereof, and that they operate and control about ninety per cent of the whole volume of the trade and commerce in lumber in the said Territory, and that about ninety per cent of the lumber used therein is brought

from the mainland, and that in order to destroy competition between themselves in the conduct of such business and to monopolize the trade and commerce in lumber in the said Territory, they have and are engaged in an unlawful combination, trust and conspiracy arbitrarily to control prices and maintain high and oppressive prices at which to sell lumber to dealers and consumers in the said Territory; and that in pursuance thereof they have been, now are and will continue to be able to so control prices and maintain high and oppressive prices at which they will sell lumber in such Territory, and have arbitrarily. raised and maintained prices at which they are selling and will sell lumber in such Territory, and will continue to do so, in violation of an act of Congress approved July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies" (26 Stat. L. 209), and with great injury to the common and public good of the people of the said Territory; which purpose is to be and is effected by an agreement entered into between the defendants whereby they have agreed with each other that they would not engage in the retail trade in lumber in said Territory as competitors of each other; and would not import for, or sell to, any competitor of themselves in the Territory, any lumber, and would discourage and prevent as far as they were able, all importations of lumber by third parties for any such competitor, it being provided in such agreement that the prices at which the lumber imported by defendants shall be sold are to be fixed by said defendants and are not to be changed on account of the condition of the lumber market in such Territory, but only by the consent of the defendants.

It is further alleged that at the present time and for some time past the prices of lumber charged to dealers and consumers in said Territory are seventy-five per cent greater than they were when the defendants entered into the said agreement; and the cost of lumber sold and delivered within the Territory is about one hundred and seventy-five per cent greater than the cost of lumber imported into the Territory, and such increase

of prices has been effected and made possible by means of the said unlawful agreement, trust and conspiracy, and in pursuance thereof the defendants have caused and will continue to cause large quantities of lumber imported as aforesaid into the said Territory to be withheld from the trade and commerce of the Territory, for the purpose of creating a scarcity of lumber therein and a resulting increase in prices thereof, and to enable them to impose oppressive prices for the sale thereof; and, but for the acts complained of, the defendants would be in free competition with each other, but as a result thereof they have acquired a complete monopoly over the importation and sale of lumber in the said Territory, and consumers and dealers in lumber therein are compelled by reason of such monopoly to purchase lumber from the defendants, and in consequence thereof many persons unknown to the plaintiff have suffered and will continue to suffer irreparable financial loss,—some of whom have been engaged in enterprises which require the use of large quantities of lumber have been compelled to sell their plants, appliances and business and retire therefrom at great financial loss.

The bill alleges that unless the defendants are restrained and enjoined, and the said unlawful agreement, combination, trust and conspiracy be decreed to be null and void and contrary to law, the defendants will continue the acts complained of to the manifest injury of the people of the United States and in defiance of law, and prays for a decree in accordance with the allegations of the bill and for a temporary injunction.

The temporary injunction was not granted and the defendants answered specifically denying all of the acts complained of.

The petition must be denied, the evidence having failed to prove the allegations or any of them which might, if established, show a violation of the act.   In the normal course of business by competing companies, especially where all deal in certain commodities on a large scale, their prices naturally tend toward an equilibrium, which may at times be disturbed by the action of one of such companies in lowering its prices in order to ob-

tain what it may consider as its share of the trade, or perhaps more than its share. In such a case the influences of competition tend to restore such equilibrium, either by the action of the other competing companies in lowering their prices to meet the cut, or holding them, being able to do so without loss of trade, in which case, the company which has lowered its prices may either return to the prices of its competitors or may continue to compete with them upon the lower basis, the tendency being that either the former course will be adopted or the other companies will follow its lead. This equilibrium of prices, with occasional disturbances thereof, is the natural condition of trade under free competition, and there is no element of illegality in it, whether it is reached by a suspicious watchfulness of each other's dealings by the competing companies, or by a friendly exchange of information and views as to the state of the market, with an expectation, more or less definite, that they will all approximate to the same standards. The element of illegality only exists where there is an agreement or understanding that they will stand together in fixing the prices of commodities with the object of controlling prices and monopolizing the business, and such agreement or understanding is in some way made or intended to be binding.

This analysis fairly gives the relations of the defendants to each other. There was no binding quality in the mutual expectation of the defendants, if there was such an expectation, that they would follow each other's lead in fixing prices on lumber, nor was there any intention that there should be such a binding effect. They were all free to conduct their respective operations as they pleased. The price lists severally adopted by them were convenient merely as a basis of dealing with customers, and all of the defendants freely competed with each other, in their sales of lumber in the way of discounts on the price lists, and in other ways as well.

There is no feature in the arrangement between the American-Hawaiian Steamship Company and the defendants, which develops a violation of the statute on the part of the defendants.

They accepted the proposition of that company to pool. their orders for lumber to be shipped on its vessels, in order to obtain the lower freight rates offered for large shipments. If there was an impropriety in such an arrangement, it was on the part of the steamship company in not giving all shippers the benefit of it.

Decree may be entered dismissing the petition with costs to the defendants.